**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | |
| **v.** | : | **Crim. No. 22-cr-289** |
| | : | |
| **LOGAN CARR,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the Defendant Logan Carr be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(C) (serious drug felony) and 18 U.S.C. § 3142(f)(1)(E) (offense involving a firearm) of the federal bail statute. Furthermore, there is a separate rebuttable presumption that Mr. Carr be held under 18 U.S.C. § 3142(e)(3)(A) and (B).

The government requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing be considered in the Court's determination regarding pre-trial detention.   The government is prepared to proceed to argument at a detention hearing on September 12, 2022.   Under the Bail Reform Act, the government may proceed by way of proffer.   *See*, *e.g.*, *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 42 (D.D.C. 2013).

Based on the nature and circumstances of the offense, the strength of the evidence, the defendant's history and characteristics, and the danger to the community, the government respectfully requests that the Court hold Mr. Carr without bond pending trial to ensure the safety of the community, as he cannot overcome the rebuttable presumption in favor of detention.

## **BACKGROUND**

Defendant Logan Carr is currently on pre-trial release for a 2021 D.C. Superior Court case involving separate firearms charges.   The terms of Mr. Carr's release unambiguously state that he may not possess any firearms.   Despite this fact, law enforcement officers and agents have now recovered four firearms on two separate occasions from Mr. Carr's apartment.

### **July 6, 2021 Incident and July 7, 2021 D.C. Superior Court Complaint**

On July 6, 2021, Metropolitan Police Department ("MPD") officers patrolling the 1400 block of R Street NW observed three males—one of whom was Mr. Carr—sitting on the front steps of 1436 R Street NW with a clear plastic bag of what appeared to be marijuana.   When an MPD officer approached Mr. Carr, the officer observed Mr. Carr shove something into his pants, and the officer observed a bulge in the shape of a firearm protruding from the waistband of Mr. Carr's pants.   An officer informed Mr. Carr that he was not free to leave, but Mr. Carr attempted to leave.   When MPD detained Mr. Carr, officers recovered a Glock 44 .22-caliber firearm from the waistband of his pants.   The Glock 44 recovered from Mr. Carr had one round in the chamber and eight rounds in the magazine.   The firearm was not registered to Mr. Carr, and he does not possess a license to carry a firearm.

In the search incident to arrest, MPD officers recovered the following property from Mr. Carr's pockets:

- Two clear plastic bags containing a green leafy substance, which yielded a positive field test color reaction for THC;

- One black scale;

- Eleven empty small clear plastic bags;

- $554.00 in U.S. currency.

On July 7, 2021, Mr. Carr was charged by complaint in D.C. Superior Court with one count of Carrying a Pistol without a License (Outside a Home or Place of Business) in violation of 22 D.C. Code, Section 4504(a) (case number 2021 CF2 003768).   The government sought detention, but the court released Mr. Carr under the condition that he may not possess any firearms.

## July 7, 2021 Search Warrant at Prior Residence

On July 7, 2021, MPD officers executed a D.C. Superior Court search warrant on Mr. Carr's then-residence at his parent's home.   Mr. Carr was not present at the time of the search. Officers primarily searched Mr. Carr's bedroom and uncovered small amounts of what appeared to be marijuana but did not seize it or any other items.

## September 29, 2021 Search Warrant at Current Residence

On September 14, 2021, a video appeared on YouTube featuring Mr. Carr and Subject 1 with a gun and marijuana.   Throughout the video, Mr. Carr can be seen holding cash and bags of what appears to be marijuana, while Subject 1 holds a firearm.   Parts of the video appear to be filmed inside of Mr. Carr's studio apartment ("Current Residence"), as well as several outdoor locations walking distance from Mr. Carr's apartment, including an elementary school, which is across the street.   Law enforcement learned that Mr. Carr signed the lease for the Current Residence with his parents and confirmed that Mr. Carr lives in that location.



*YouTube video of Mr. Carr holding a bag containing what appears to be marijuana while Subject 1 holds what appears to be U.S. currency and a firearm.*



*YouTube video of Mr. Carr and Subject 1 with the rear of the elementary school visible in the background.*

Law enforcement sought and received a D.C. Superior Court search warrant for Mr. Carr's apartment.   On September 29, 2021, law enforcement observed Mr. Carr, Subject 1, and Subject 2 (Subject 1's brother) enter the apartment building for Mr. Carr's Current Residence.   Subject 1 was wearing a red backpack at the time.   Shortly thereafter, MPD executed the warrant at Mr.

Carr's apartment.   Mr. Carr and Subject 2 were present in the apartment, and officers recovered three firearms, as well as drugs and drug distribution paraphernalia.   Specifically, officers recovered:

- A 9mm Glock 43, wedged above the light over the kitchen sink.   Officers also found a magazine with six rounds (capacity of six) and a single 9mm round.



*Glock 43 recovered from Mr. Carr's kitchen.*



*Glock 43 recovered from Mr. Carr's kitchen.*

- A 9mm Glock 17 in the bathroom, from which Mr. Carr and Subject 2 emerged upon officers' entry.

 

*Glock 17 recovered from Mr. Carr's bathroom vanity.*

6

- A .45 auto Ruger SR45 from a red backpack that was in the living area.

 

*Ruger SR45 recovered from Mr. Carr's living room.*

- Approximately 15 ounces of green leafy substance, which tested positive for the presence of THC.   The marijuana was recovered from Mr. Carr's pockets, the coffee table, and a large amount was found stuffed in a trash bag in a pillowcase in the closet.



*Marijuana recovered from Mr. Carr's closet.*

- Approximately 8.5 grams of a white powdery substance, which gave a positive color reaction for the presence of cocaine.   The cocaine base (crack cocaine) was recovered from the coffee table as well as from a shoebox that Mr. Carr told officers about.



*Cocaine base and U.S. currency found in the shoebox in Mr. Carr's apartment.*

- Various indicia of distribution, such as two digital scales (one found on the coffee table and another removed from Mr. Carr's pocket), and a large amount of U.S. currency (including from the above-mentioned shoebox).

DNA swabs were obtained from Mr. Carr, Subject 2, and later, Subject 1.   The results indicate for the Glock 43 recovered from the kitchen a likelihood of 4.6 sextillion in favor of

inclusion for Mr. Carr, while Subject 2 had limited support for exclusion, and Subject 1 was excluded.   Mr. Carr had support for exclusion for the other two firearms.

Both during and after the search, Mr. Carr repeatedly stated that the apartment is his, and at one point when officers were counting the amount of cash present on the coffee table, Mr. Carr stated that he had more money than that in his shoebox.   Officers searched the shoebox and recovered approximately $1,000 in U.S. currency, as well as suspected crack cocaine, as indicated in the above photograph.

**June 9, 2022 Superior Court Indictment**

On June 9, 2022, the government filed a five-count indictment against Mr. Carr in D.C. Superior Court, stemming from the July 6, 2021 incident, charging him with Unlawful Possession with Intent to Distribute a Controlled Substance While Armed; Possession of a Firearm During Crime of Violence or Dangerous Offense; Carrying a Pistol Without a License (Outside Home or Place of Business); Possession of Unregistered Firearm; and Unlawful Possession of Ammunition. Mr. Carr was arraigned on this indictment on July 25, 2022.

**September 1, 2022 Search Warrant at Current Residence**

An indictment was returned in the instant case, stemming from the September 29, 2021 search of Mr. Carr's apartment, on August 30, 2022.   On September 1, 2022, federal law enforcement executed the corresponding arrest warrant for Mr. Carr.   Agents knocked and announced on the door of Mr. Carr's Current Residence, the same studio apartment previously searched on September 29, 2021.   Officers observed Mr. Carr, clothed in a tank top and boxer shorts, standing near an open window.   Mr. Carr requested that agents obtain pants, shoes, and a

sweatshirt from his apartment.   To do so, agents conducted a protective sweep of the apartment to find the items Mr. Carr requested.

In the course of this protective sweep, agents saw, in plain view, items consistent with narcotics trafficking, including a small digital scale; a small plate and a razor blade; a box of sandwich-sized plastic zip bags; a Pepsi bottle split in two with a false bottom; a large clear bag containing a green leafy substance consistent with the appearance of marijuana; a clear plastic bag containing approximately ten small zips of a white rock-like substance consistent with the appearance of crack cocaine; and two cellphones (one smartphone and one flip phone).

Law enforcement then applied for and received a search warrant for Mr. Carr's apartment. After receiving the search warrant, law enforcement recovered the following items in Mr. Carr's apartment:

- Ten small clear zip bags containing approximately 1.6 grams of a white rock-like substance that field tested positive for crack cocaine;

- A bag with approximately 14.5 grams of a white powder substance consistent with the appearance of cocaine;

- A Glock 9mm magazine with a 15-round capacity loaded with four rounds;

- An unloaded pro mag extended magazine;

- A bag containing white Nike men's shoes, a wet black hoodie, a wet black ski mask, two blue latex gloves, and a black Glock 9mm 33-round capacity magazine fully loaded; and

- $1,367.00 of U.S. currency.

Separately, in the grass alleyway beneath the open window by which agents observed Mr. Carr standing, agents recovered a Glock 19 9mm handgun loaded one round in the chamber and with a fully loaded 17-round magazine, a bag containing approximately 12 grams of an off-white rock-like substance that tested positive for crack cocaine, and a clear knotted plastic bag containing approximately 7.2 grams of a white powder that field tested positive for cocaine.   Mr. Carr was alone in the apartment when agents executed the arrest warrant.   Furthermore, agents reviewed surveillance footage from Mr. Carr's apartment building, and in one camera recording, a small dark-colored object can be seen falling from the vicinity of the open window at the approximate time that agents knocked and announced on Mr. Carr's apartment door.   Thus, it appears that Mr. Carr threw a loaded firearm and narcotics out of his apartment window in an attempt to keep law enforcement from recovering these items.

Upon arrest, Mr. Carr was transported to the Washington Field Office of the Federal Bureau of Investigation ("FBI").   While in custody, at or around 7:30 a.m., Mr. Carr requested to use the restroom and was taken to a restroom in a witness interview room.   At approximately 10:30 a.m., an Assistant U.S. Attorney ("AUSA"), who was at the FBI field office for another matter, used the witness interview room restroom.   An FBI agent entered the restroom immediately after the AUSA's exit and observed a zip lock bag containing several additional knotted zip lock bags floating in the toilet.   The zip lock bags appear to contain narcotics.   The AUSA did not observe the zip lock bags while using the toilet.   Law enforcement agents are not aware of anyone using the witness interview room restroom after Mr. Carr and before the AUSA.   As such, it appears that Mr. Carr attempted to flush additional narcotics in his possession down the toilet.

12

## PROCEDURAL HISTORY

On August 30, 2022, Defendant Logan Carr was charged by indictment with one count of Unlawful Possession With Intent to Distribute Cocaine Base, in violation of Title 21 U.S.C. § 841(a)(1) and (b)(1)(C); one count of Unlawful Possession With Intent to Distribute Marijuana, in violation of Title 21 U.S.C. § 841(a)(1) and (b)(1)(D); and one count of Using, Carrying, and Possessing a Firearm During and in Relation to a Drug Trafficking Offense, in violation of Title 18 U.S.C. § 924(c)(1)(A)(i).

Mr. Carr's initial appearance was originally scheduled on September 2, 2022.   Due to Mr. Carr's being unable to attend, the hearing was rescheduled and occurred on September 6, 2022, before the Honorable Zia M. Faruqui.   The government orally moved for detention pending trial pursuant to the above-referenced provisions of the federal bail statute.   A detention hearing is scheduled for September 12, 2022, at 1 p.m.

## LEGAL AUTHORITY AND ARGUMENT

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f).   Specifically, the presentation of hearsay evidence is permitted.   *Id.*; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."   *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device, and cross-examination should be limited to the disputed issues, since

the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery.   *Smith*, 79 F.3d at 1210, *see also Williams*, 798 F. Supp. at 36.

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.   18 U.S.C. § 3142(g).   A review of these factors shows that detention is appropriate.

The government respectfully submits that there is no condition or combination of conditions that would assure the safety of the community or of Mr. Carr's appearance at future proceedings.   Since Mr. Carr has been on pre-trial release in his D.C. Superior Court case, four firearms have been seized from his apartment on two occasions, and Mr. Carr has a demonstrated history of non-compliance with pre-trial release, including the possible tampering of evidence.

## I.   Nature and Circumstances of the Offenses Charged

The nature and circumstances of the offenses charged weighs in favor of detention.   As described above, law enforcement searched Mr. Carr's apartment twice, nearly one year apart. During each search, law enforcement seized firearms, ammunition, substances that appear to be narcotics, and other drug paraphernalia

During the September 2021 search, for example, officers recovered a Glock 43, a Ruger SR45, and a Glock 17 as well as white rock-like substances consistent with the appearance of crack cocaine.   DNA testing indicated for the Glock 43 recovered from Mr. Carr's kitchen a likelihood of 4.6 sextillion in favor of inclusion for Mr. Carr.   Mr. Carr had support for exclusion for the

other two firearms.   Officers also recovered a large amount of U.S. currency (including from a shoebox that Mr. Carr himself told officers about), two digital scales (including one from Mr. Carr's pocket), crack cocaine (including some from the same aforementioned shoebox), and approximately 15 ounces of marijuana.

During the September 2022 search, agents again recovered firearms and drugs, despite Mr. Carr's attempts to prevent their discovery and seizure.   Specifically, agents recovered a loaded Glock 19 firearm, bags of white and off-white rock-like substances consistent with the appearance of crack cocaine, ammunition, and three firearm magazines, including one fully loaded 33-round extended magazine.   There is no dispute that Mr. Carr is the sole tenant of his Current Residence.

Not only was Mr. Carr on release from his D.C. Superior Court case when the facts giving rise to the instant case occurred, but Mr. Carr was also aware that he was under investigation by the government at the time agents executed the arrest warrant in this case.   In other words, Mr. Carr showed blatant disregard for the law.   Based on the nature and circumstances of the offense, there is no release condition, or combination of conditions, that can assure the safety of the community.

## II.   **Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention.   The evidence against Mr. Carr is strong.   As detailed above, the illicit items were

found in Mr. Carr's apartment, Mr. Carr directed officers to some of the contraband, and DNA results strongly link Mr. Carr to one of the firearms recovered.

**III.   The Defendant's History and Characteristics**

The third factor, the history and characteristics of the defendant, also weighs in favor of detention.  This Court considers, among other factors, "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history." *United States v. Taylor*, 289 F. Supp. 3d 55, 69 (D.D.C. 2018).  In considering pretrial detention, the Court "may also consider prior arrests or charges brought against a defendant, even when those actions did not result in convictions."  *See id.* at 70.

While Mr. Carr does not appear to have any prior convictions, as noted in the Pre-Trial Services Report (PSR), he was pending release in D.C. Superior Court case 2021 CF2 003768 when he committed the offense in this case.  Notably, that case also involves Mr. Carr's possession of drugs with intent to distribute while in possession of a firearm.  The D.C. Superior Court charges carry a presumption of detention under local D.C. law.  *See* 23 D.C. Code § 1322(c)(1).  Thus, Mr. Carr effectively has two pending firearm and narcotics charges with rebuttable presumptions in favor of detention.

The fact that agents recovered more drugs and a firearm when executing the arrest warrant for this case gives rise to additional gun and drug charges.  Mr. Carr has proven himself untrustworthy time and time again.  Further, Mr. Carr appears to have no stable legal employment, his day-to-day activities appear to revolve around his engagement in drug trafficking, and he has brazenly ignored the pre-trial release condition that he does not possess any firearms.  While Mr.

Carr's parents live nearby and it appears that he has a supportive family, his first arrest for drug trafficking with a firearm occurred *while he was living with his parents and under their supervision*. Thus, Mr. Carr he has already demonstrated that his parents' supervision is insufficient to prevent criminal activity. All these facts and characteristics unique to this defendant underscore that he poses a pronounced risk of non-compliance should he be released.

## IV.   <u>Danger to the Community</u>

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. As noted above, based on the charges in the indictment, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" where a judicial officer determines that there is probable cause to believe that the person committed the charged offense. 18 U.S.C. § 3142 (e)(3)(A). Under the Bail Reform Act, 18 U.S.C. §§ 3142 *et seq.*, "[t]he statutory language, as well as the legislative history, unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985). The legislative history also "fully supports the conclusion that Congress intended to equate drug trafficking with danger to the community." *Strong*, 775 F.2d at 507. As noted by the D.C. Circuit:

The legislative history indicates that the rebuttable presumption covering serious drug trafficking offenses was included because:

> Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism. Furthermore, the Committee received testimony that flight to avoid prosecution is particularly high among persons charged with major drug offenses. Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers

often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and the foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences.

*United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S. Code Cong. & Admin. News 1984, p. 3203).   Thus, in creating a presumption of pretrial detention for serious drug trafficking offenses, both the legislative history and the statutory language make clear that real-world concerns lie behind the recognition of the inherent pretrial dangers and flight risks posed by those who commit serious drug trafficking offenses.

The presumption is rebuttable and does not shift the ultimate burden of proof from the government's shoulders.   But it does create a burden of production on the defense to submit at least some credible evidence that might purport to overcome it.   And even if the defense does submit such evidence, the presumption remains as a factor that may be considered by the Court among others in determining whether the defendant should be detained, and the presumption retains "evidentiary weight."   *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear.   The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight") (citations omitted); *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) ("[T]he mere production of evidence [regarding flight risk for a drug offense] does not completely rebut the presumption . . . . In making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society.") (citation omitted); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir. 1991) ("Although the government retains the burden of persuasion, a defendant must introduce some evidence contrary

18

to the presumed fact in order to rebut the presumption . . . . Once a defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant.); *see also United States v. Jessup*, 757 F.2d 378, 382–83 (1st Cir.1985) (rejecting "bursting bubble" approach) (internal citation omitted); *United States v. Ali*, 793 F.Supp.2d 386, 388 and 388 n.2 (D.D.C. 2011) ("Even if such contrary evidence or credible proffers are offered, the presumption remains as a factor to be considered by the Court amongst others in determining whether the defendant should be detained.").

The firearms and narcotics seized during the searches of Mr. Carr's apartment raise grave safety concerns for the community.   Moreover, Mr. Carr's conduct, including recent conduct, has shown a clear history of unlawful firearms possession, narcotics possession and trafficking, and failures to comply with pre-trial release conditions.   In fact, Mr. Carr's actions in attempting to prevent agents from seizing contraband—namely, dropping a loaded weapon and drugs from his apartment window into a public alleyway in close proximity to an elementary school—is reckless and egregious.   Given the above assessment of all four relevant factors, no condition, or combination of conditions, can ensure that Mr. Carr will comply with court orders and abide by appropriate release conditions.

## CONCLUSION

The government respectfully requests that the Court grant the government's motion to detain Defendant Logan Carr pending trial.

Respectfully submitted,

MATTHEW GRAVES,
UNITED STATES ATTORNEY

By:      /s/ *Allison L. McGuire*
Allison L. McGuire
D.C. Bar No. 187809
Andy T. Wang
D.C. Bar No. 1034325
Assistant United States Attorneys
United States Attorney's Office for D.C.
601 D Street, N.W., Fifth Floor
Washington, D.C. 20530
allison.mcguire2@usdoj.gov
(202) 252-7504
andy.wang@usdoj.gov
(202) 870-4940

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2022, I caused a copy of the foregoing to be served on counsel of record via electronic filing.

/s/ *Allison L. McGuire*
Allison L. McGuire
Special Assistant United States Attorney