UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LOGAN CARR,<br><br>       *Defendant.* | Criminal Action No. 22-289 (RDM) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Logan Carr's motion to revoke his pretrial detention. Dkt. 17. Carr has been charged by indictment with Unlawful Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), Unlawful Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D), and Using, Carrying, and Possessing a Firearm During and in Relation to a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). *See* Dkt. 1 at 1–2. Carr was arrested on September 2, 2022, Dkt. 6, while on pretrial release for a separate D.C. Superior Court case involving firearms charges, Dkt. 5 at 4. After a detention hearing, Magistrate Judge Michael Harvey ordered that Carr be detained pending trial. Dkt. 13. Carr now moves to revoke that order and requests release on home detention, subject to various conditions including location monitoring and third-party custodianship by his parents. Dkt. 17 at 1, 4–5.

For the reasons that follow, the Court will **DENY** Carr's motion, Dkt. 17.

## I. BACKGROUND

The following background is taken from the government's charging instruments, the parties' briefs, and proffers at the hearing held on October 13, 2022, as well as the exhibits

1

tendered to the Court. *See United States v. Smith*, 79 F.3d 1208, 1209–10 (D.C. Cir. 1996) (indicating that defendant and the government can proceed by proffer); 18 U.S.C. § 3142(f) (providing that usual "rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at" a detention hearing). It bears emphasis, however, that the Court's description of the relevant facts is necessarily preliminary and incomplete and does not represent a determination on the merits, which is both premature and, in any event, the province of the jury.

According to the government, Carr was first arrested on July 6, 2021, when Metropolitan Police Department ("MPD") officers responded to an anonymous tip that Carr and two other individuals were selling drugs on R Street, NW. Dkt. 19 at 2. After detaining Carr, the MPD recovered from his waistband a .22-caliber firearm, for which Carr did not have a license, with one round in the chamber and eight rounds in the magazine. *Id.* at 3. The MPD also recovered, during a search incident to arrest, two clear plastic bags containing a "green leafy substance" that field-tested positive for THC; a black scale; eleven empty small clear plastic bags; and $554 in cash. *Id.* The following day, Carr was charged by complaint in D.C. Superior Court with one count of Carrying a Pistol without a License, in violation of 22 D.C. Code § 4504(a). *Id.* The Superior Court ordered Carr's release that same day under the condition that he not possess firearms. *Id.* at 27 (Ex. 1).[1] Also on July 7, 2021, MPD officers searched Carr's bedroom at his

---

[1] Nearly a year later, on June 9, 2022, the government filed a five-count indictment against Carr in Superior Court stemming from the July 6, 2021 search. Dkt. 19 at 3. The indictment added several further charges to the original carrying-without-a-license charge, including unlawful possession with intent to distribute a controlled substance, possession of a firearm during a crime of violence or dangerous offense, and unlawful possession of ammunition. *Id.* Carr was arraigned on this indictment on July 25, 2022. *Id.*

2

parents' home; they uncovered "what appeared to be marijuana" but did not seize it or any other items. *Id.* at 4.

On September 14, 2021, about two months after Carr was charged in D.C. Superior Court, a video was posted on YouTube in which Carr appeared to be holding cash and bags of a green substance resembling marijuana. *Id.* The government contends that this video, which also features a second individual holding a gun, was filmed in Carr's apartment (where he moved after the June 7, 2021 search of his parents' home). *Id.* After the video was posted on YouTube, law enforcement sought and received a D.C. Superior Court search warrant for Carr's apartment. *Id.* The officers executed the search on September 29, 2021, while Carr and a friend were at home. *Id.* at 5–6.

During the search, officers recovered (1) a 9mm Glock 43 in the kitchen; (2) a full six-round capacity magazine with six rounds and a single 9mm round; (3) a 9mm Glock 17 in the bathroom; (4) a firearm in a backpack (which appears to have belonged to Carr's friend) in the living area; (5) approximately 15 ounces of green leafy substance, which tested positive for the presence of THC, in Carr's pockets, in the coffee table, and in a trash bag in a pillowcase in the closet; (6) approximately 8.5 grams of a white rock-like substance, which field tested positive for cocaine base, from the coffee table and a shoebox; (7) two digital scales; and (8) at least $1,000 in U.S. currency. *Id.* at 6–11. The government indicates that DNA testing "strongly connects the defendant to the firearm seized from his kitchen," and that Carr "repeatedly stated" during the search "that the apartment was his" and that "he had more money than [the officers had

initially recovered] in [a] shoebox" in his closet, where the cocaine base was later found. *Id.* at 11.

The government represents that, after the September 2021 search, the government and the defense "engaged in pre-indictment plea discussions to resolve his Superior Court matter and the September 2021 search." *Id.* at 16. Carr was, apparently, "aware that he was under investigation, that plea negotiations had broken down, and that an indictment was forthcoming." *Id.* The government ultimately charged Carr by indictment on August 30, 2022 with Unlawful Possession With Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); Unlawful Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D); and Using, Carrying, and Possessing a Firearm During and in Relation to a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Dkt. 1.

Following his indictment, federal law enforcement agents executed an arrest warrant at Carr's apartment on September 1, 2022. Dkt. 19 at 11–12. After observing several items that were allegedly "consistent with narcotics trafficking" during a protective sweep of the apartment, officers applied for and received a search warrant for the apartment. *Id.* at 12. The government alleges that, while executing that warrant, officers recovered (1) ten clear zip bags containing a white rock-like substance that field tested positive for crack cocaine; (2) a bag with at least 12.2 grams of fentanyl; (3) a Glock 9mm magazine with a 15-round capacity loaded with four rounds and an unloaded pro mag extended magazine; (4) a Glock 9mm 33-round capacity magazine fully loaded; and (5) $1,367.00 of U.S. currency. *Id.* at 12–13.

In addition to the items found in Carr's apartment, the officers recovered from the adjacent alleyway a Glock 9mm handgun with one round in the chamber and a fully loaded 17-round magazine and two bags containing crack cocaine and cocaine, respectively. *Id.* at 13. The

government contends that Carr threw these items out of his apartment window when law enforcement officers arrived to execute the arrest warrant. *Id.* Agents allegedly observed Carr standing at an open window above this alleyway when they first arrived at the apartment. *Id.* at 12–13. A review of the apartment building surveillance footage, moreover, revealed a small object "falling from the vicinity of the open window at the approximate time that agents knocked and announced on the defendant's apartment door." *Id.* at 13.

After a detention hearing, Magistrate Judge Michael Harvey found "[b]y clear and convincing evidence that no condition or combination of conditions [would] reasonably assure the safety of any other person and the community" if Carr were released, and he accordingly granted the government's motion for detention. Dkt. 13 at 2. Judge Harvey concluded, in particular, that Carr "pose[d] a danger to the community" because he "continued to possess firearms . . . [and] distribution-level amounts of narcotics" while "under indictment in a drugs and gun case in D.C. Superior Court" and "in violation of his conditions of release" and because he "attempted to dispose of narcotics and a loaded firearm by tossing them out of the window of his apartment" when law enforcement arrived to arrest him. *Id.* at 5–6. Judge Harvey concluded, moreover, that the strength of the government's evidence "weigh[ed] in favor of detention," and that, while Carr "has no prior convictions" and "has connections to this community, including obviously supportive and caring parents," those considerations "do not outweigh the dangerousness of his recent . . . conduct" or the fact that he was on pretrial release when law enforcement "recovered the additional drugs and gun for which he is charged here." *Id.* at 6.

5

## II.  LEGAL STANDARD

Under 18 U.S.C. § 3145(b), a defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment of the order" with "the court having original jurisdiction over the offense."  18 U.S.C. § 3145(b).  Although the D.C. Circuit has yet to opine on the question, *see United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021), substantial precedent supports the view that a magistrate judge's detention order is subject to *de novo* review by the district court, *see United States v. Hunt*, 240 F. Supp. 3d 128, 132–33 (D.D.C. 2017) (identifying cases supporting this proposition from the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits); *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018); *United States v. Sterlingov*, 573 F. Supp. 3d 28, 34 (D.D.C. 2021).

The Bail Reform Act permits pretrial detention in only "carefully defined circumstances." *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).  The question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  If not, the Court "shall order the detention of the [defendant] before trial." *Id.* "The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community [must] be supported by clear and convincing evidence," and the government bears the burden of proof as to that evidence.  *Id.* § 3142(f)(2)(B).  Furthermore, "[d]etention cannot be based on a finding that [the] defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness[,] . . . [as] otherwise the scope of detention would extend beyond the limits set by Congress." *Munchel*, 991 F.3d at 1283.  Only a preponderance of the evidence, however, is

required to support "[a] determination that an individual is a flight risk." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019).

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also Taylor*, 289 F. Supp. 3d at 62 ("The default position of the law . . . is that a defendant should be released pending trial." (internal quotation marks omitted)).  "That default is modified, however, for certain[] particularly dangerous defendants." *Taylor*, 289 F. Supp. 3d at 62 (internal quotation marks omitted).  In particular, the Bail Reform Act creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure . . . the safety of the community if . . . there is probable cause to believe that the person committed" one of an enumerated list of crimes, including "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)" and "an offense under [21 U.S.C. §] 924(c)." 18 U.S.C. § 3142(e)(3).  For purposes of making that determination, "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *see also United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("[T]he indictment alone would have been enough to presumption that no condition would reasonably assure the safety of the community.").

Once triggered, "the presumption operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985).  "While the burden of production may not be heavy," *United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. 2016) (citations omitted), the defendant must proffer "at least some evidence" or basis to conclude that

7

the case falls "outside 'the congressional paradigm'" giving rise to the presumption. *Stone*, 608 F.3d at 945–46 (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)); *see also United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1998) (finding that the presumption "represents Congress's general factual view about the special flight risks and the special risks of danger to the community presented by defendants who commit the crimes to which it attaches"). The defendant's burden, moreover, is only a burden of production; the burden of persuasion remains with the government throughout the proceeding. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001); *see also Alatishe*, 768 F.2d at 371 n.14 (citing *Jessup*, 757 F.2d 378, but not deciding the question).

As then-Judge Breyer explained in an opinion that the D.C. Circuit has described as "scholarly" and "extremely compelling it its rationale," *Alatishe*, 768 F.2d at 371 n.14, the presumption is not a "bursting bubble" that becomes devoid of all force once a defendant has met his burden of production. *Jessup*, 757 F.2d at 382. The presumption does "not vanish upon the introduction of contradicting evidence," nor does the burden of persuasion shift to the defendant. *Id.* at 383 (citation omitted). Rather, even after a defendant carries his burden of persuasion, the judicial officer must "keep in mind the fact that Congress has found that" those charged with the specified offenses are likely to pose a danger to the community. *Id.* at 384. In short, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Mercedes*, 254 F.3d at 436.

### III. ANALYSIS

As an initial matter, the Court agrees with the magistrate judge's conclusion that the presumption that no pretrial release conditions will reasonably assure the safety of the community was triggered by Carr's indictment. Dkt. 13 at 2. Count One of the indictment

charges Carr with unlawful possession with intent to distribute cocaine base, and Count Three charges him with using, carrying, and possessing a firearm during and in relation to a drug trafficking offense. Dkt. 1 at 1–2. Both of these charges fall within the list of crimes that trigger the presumption, *see* 18 U.S.C. § 3142(e)(3)(A); 18 U.S.C. § 3142(e)(3)(B), and the indictment is sufficient to establish probable cause for purposes of invoking that presumption, *Smith*, 79 F.3d at 1210.

With that presumption in mind, the Court considers whether any conditions of release "will reasonably assure [Carr's] appearance . . . as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In addition to the rebuttable presumption, the judicial officer must consider: (1) "the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance [or] firearm;" (2) "the weight of the evidence against the [defendant];" (3) the history and characteristics of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." *See id.* § 3142(g).

A. **Nature and Circumstances of the Offense**

The Court first considers "the nature and circumstances of the offense charged," in general, and specifically whether "the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). As noted above, even when the presumption created by the charged offenses has been rebutted, it is "incorporated into the other factors considered by this Court in determining whether to grant a conditional release and is given substantial weight." *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011). Here, the government has established probable cause to believe that Carr committed crimes involving

9

firearms and a controlled substance, and he faces up to twenty years in prison if convicted. *See* 21 U.S.C. § 841(b)(1)(C). The crimes charged are undeniably serious, and the combination of drug distribution *and* the illegal possession of (multiple) guns presents a serious danger to the community. The first factor thus weighs in favor of detention.

**B.     Weight of the Evidence Against the Defendant**

The second factor—the weight of evidence against the defendant—also weighs in favor of detention. The government's evidence of Carr's guilt involves video evidence of Carr possessing large quantities of marijuana. Dkt. 19 at 5. Police officers recovered at least some of the marijuana at issue from Carr's pockets; they also located cocaine base in a shoebox in his apartment (to which Carr explicitly directed the officers). *Id.* at 8, 10. DNA testing, moreover, strongly suggests that Carr possessed at least one of the three firearms found in his apartment on September 29, 2021. *Id.* at 11. Nor does Carr appear to contest, in his motion for release, the strength of the government's evidence against him or his connection to at least one of the guns or to the drugs recovered from his apartment in September 2021. *See* Dkt. 17 at 5. He merely argues that this factor is the "least important" of those the Court must consider. *Id.* (quoting *United States v. Padilla*, 538 F. Supp. 3d 32, 43 (D.D.C. 2021)). Even so, this factor weighs in favor of detention.

**C.     History and Characteristics of the Defendant**

The third factor—the history and characteristics of the defendant—requires the Court to consider (1) the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;" and (2) "whether, at the time of the current offense or arrest, the defendant was on

probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3). The Court is convinced, based on the evidence presented at the detention hearing, that Carr has supportive parents, who have continued, over the past several years, to help Carr manage his mental health issues. *See* Rough Tr. at 12, 20–22 (Oct. 13, 2022 Hearing). Carr's youth, along with his supportive family, generally speaks in favor of his release. *Cf. United States v. Cua*, 21-cr-107, 2021 WL 918255, at *3 (D.D.C. Mar. 10, 2021) (indicating that Cua's "young age" and "family and community ties" weighed in favor of his pretrial release).

      The Court notes, however, that the September 29, 2021 search that gave rise to the instant charges was neither the first nor last time that Carr was found with both guns and drugs—including at least once while he was living with his parents. Carr possessed (at least) one gun while on "release pending trial," 18 U.S.C. § 3142(g)(3)(B), in a case stemming from previous gun possession and drug dealing, and in direct contravention of the conditions of his release that barred him from possessing a firearm, Dkt. 19 at 27. Moreover, Carr was "aware that he was under [federal] investigation" for the drugs and guns recovered during the September 29, 2021 search, *id.* at 16, when he once again possessed drugs, ammunition, and a gun one year later, *id.* at 12–13. To be sure, "[d]etention cannot be based on a finding that [the] defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness." *Munchel*, 991 F.3d at 1283. But the fact that Carr's prior criminal history "involves the same type of conduct at issue in the present case" at least "raises the specter that he might, if released, commit just the type of offense that Congress concluded poses a unique danger to the community." *Taylor*, 289 F. Supp. 3d at 69–70; *see* 18 U.S.C. § 3142(e)(3)(B) (identifying an offense under 18 U.S.C. § 924(c) as giving rise to a presumption of dangerousness). The Court accordingly

11

concludes that Carr's history of drug and gun possession during the pendency of ongoing criminal charges and investigations ultimately outweigh his young age and his supportive family. This factor, accordingly, also weighs in favor of detention.

**D.      Danger to the Community**

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release." 18 U.S.C. § 3142(g)(4). In cases, such as this one, where the government seeks to detain a defendant before trial to ensure "the safety of any other person and the community," *id.* § 3142(e), "[c]onsideration of this factor encompasses much of the analysis set forth above, but is broader in scope," requiring an "open-ended assessment of the 'seriousness' of the risk to public safety." *Taylor*, 289 F. Supp. 3d at 70. As defense counsel highlighted at the detention hearing, the government nowhere alleges that Carr has engaged in physical violence. *See* Rough Tr. at 6 (Oct. 13, 2022 Hearing) ("[W]e're not aware of any allegation of violence used or violence threatened . . . ."). But as this Court has explained, "Congress intended that the concern for community safety reflected in the Bail Reform Act 'be given a broader construction than merely the danger of harm involving physical viol[ence],' and, in particular, that it encompass 'the risk that a defendant will continue to engage in drug trafficking.'" *Taylor*, 29 F. Supp. 3d at 71 (quoting 3B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 766 (4th ed. 2013)). And "although the mere fact that a defendant possessed a firearm does not constitute evidence of a danger to the community," firearm possession by an individual allegedly engaged in illegal drug distribution "is a different matter." *Id.*

In light of the government's proffers, the evidence strongly suggests that Carr was involved in the distribution of marijuana and cocaine; that he possessed firearms and multiple

12

rounds of ammunition; and that he tossed a loaded firearm into what the government indicates is a "public alleyway in close proximity to an elementary school," Dkt. 19 at 21; Rough Tr. at 37 (Oct. 13, 2022 Hearing). The evidence also suggests that Carr knew of the risk he was taking by possessing the later firearms and that he was nevertheless undeterred by the fact that he was already facing a substantial term of imprisonment for the same conduct on his D.C. Superior Court charges. Dkt. 19 at 3; *cf. Taylor*, 289 F. Supp. 3d at 72 (considering, in this analysis, the fact that the defendant "knew that he was taking a substantial risk by possessing th[e] firearms" given his criminal history). These facts, along with the (non-bursting) presumption that those charged with drug offenses carrying sentences of ten years or more—or with the use of a gun in the commission of a drug offense—pose a danger to the community, *see* 18 U.S.C. § 3142(e)(3), convince the Court that Carr's release would pose a danger to the community.

      Carr argues that any danger to the community can be "abated" by his residence with his parents as third-party custodians in Georgia, where he will be physically distanced from any negative influences in the District. Rough Tr. at 5 (Oct. 13, 2022 Hearing). But the Court is unconvinced that the possibility of Carr's relocation to Georgia with his parents sufficiently mitigates the risk that Carr will pose a danger to the community if released. As the government notes, the gun and drug charges in Carr's D.C. Superior Court case arose while Carr resided with his parents, Dkt. 19 at 2–3, and his past behavior reveals at least some willingness to store drugs at his parents' house, *id.* at 3. Carr's relocation to Georgia, moreover, is not practical in light of the parties' indication that Carr intends to plead guilty at the hearing this Court has scheduled in this matter for November 17, 2022, *see* Dkt. 24; Dkt. 25, and could thus spend at most three weeks in Georgia before returning to the District. More importantly, Carr's calls from the D.C. Jail—although not entirely conclusive—reflect significant reluctance on Carr's part to cooperate

with his parents' instructions or to remain in Georgia with them, even if he did relocate.  *See* Dkt. 19 at 19.

Lastly, Carr points to the violent attacks he faced in the D.C. Jail as "alter[ing] the dangerousness calculus by making it significantly more likely that [the defendant] will obey the conditions of his release and thus not pose a danger to the community."  Dkt. 17 at 8 (quoting *United States v. Thomas*, 456 F. Supp. 3d 69, 77 (D.D.C. 2020)).  The Court does not doubt the severity of the violence Carr faced in the D.C. Jail, and the Court itself took steps to ensure that Carr was quickly transferred to a safer environment after these attacks.  But unlike with the ongoing COVID-19 pandemic that the Court considered in *Thomas*, there is no evidence that Carr continues to face the same severe risk that he faced while incarcerated at the D.C. Jail.  Moreover, this Court in *Thomas* clarified that any health and safety risks faced in detention are not themselves "a sufficient basis" to order the defendant's release "if the government has shown by clear and convincing evidence," as it has here, "that no condition or combination of conditions would reasonably assure the safety of the community if [the defendant] is released."  *Thomas*, 456 F. Supp. 3d at 77.

Because each of the four factors weigh in favor of pretrial detention, the Court concludes that no conditions or combination of conditions will reasonably assure the safety of the community if Carr is released.

## CONCLUSION

For the foregoing reasons, Carr's motion to revoke his pretrial detention, Dkt. 17, is **DENIED**, and Carr's emergency motion to expedite the hearing on this motion, Dkt. 18, is **DENIED** as moot.

    **SO ORDERED**.

                                            /s/ Randolph D. Moss
                                            RANDOLPH D. MOSS
                                            United States District Judge

Date:  October 22, 2022